UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY, | ) ) ) | CIV. 09-5056-JLV |
| Plaintiff | ) ) | REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION |
| vs. | ) ) | TO REMAND [DOCKET 9] |
| THE VALSPAR CORPORATION, INC., a Delaware corporation; and BONNIE ESTES, an individual, | ) ) ) ) | |
| Defendants. | ) ) | |

## INTRODUCTION

This matter is before the court on the Notice of Removal filed by

defendant the Valspar Corporation, Inc. (hereinafter "Valspar").  Pending before

the court is a motion to remand this matter back to state court [Docket No. 9]

filed by plaintiff State Farm Fire and Casualty Company (hereinafter "State

Farm").  The district court, the Honorable Jeffrey L. Viken, referred State

Farm's motion to this magistrate judge for a report and recommendation

pursuant to 28 U.S.C. § 636(b)(1)(B).  See Docket No. 15.

## FACTS

### A.    Proceedings in State Court

On June 28, 2005, Bonnie Estes, a resident of Rapid City, South Dakota,

was helping her neighbor, Ramona Policky, stain the deck attached to

Ms. Policky's home, using a product manufactured by Valspar.  Ms. Estes

allegedly left some rags and/or brushes contaminated with the Valspar product sealed in plastic bags on Ms. Policky's deck.  The bag ignited, starting a fire which caused "hundreds of thousands of dollars"[1] in damage to Ms. Policky's real and personal property, which was insured by State Farm.

State Farm paid Ms. Policky's claim under her policy with it, and then brought this subrogation action against Ms. Estes and Valspar in South Dakota state court for the Seventh Judicial Circuit on June 26, 2008.  State Farm alleged a single claim of negligence against Ms. Estes.  Against Valspar, State Farm asserted claims of negligence in failing to warn, breach of the warranties of merchantability and fitness for a particular purpose, and strict liability for failure to warn.

In Valspar's notice of removal, State Farm is alleged to be a citizen of the state of Illinois, the state of its incorporation, and is alleged to have its principal place of business in Illinois as well.  See Docket No. 1.  Valspar alleges it is a citizen of Delaware, the state of its incorporation, and also of Minnesota, the place of its principal place of business.  Id.  In opposing removal, State Farm does not deny these allegations as to citizenship, so the

---

[1]The allegation as to the amount of damage caused by the fire is taken from State Farm's complaint against the defendants filed in state court.  For purposes of the instant motion, no party has taken issue with this representation.  Therefore, for purposes of determining the court's jurisdiction under 28 U.S.C. § 1332, the court assumes that the amount in controversy element has been ment.

court takes them to be true for purposes of resolving State Farm's motion to remand.

Ms. Estes answered State Farm's complaint in state court, denying liability and asserting a cross claim against Valspar. Valspar answered State Farm's complaint, also denying liability and also asserting a cross claim against Ms. Estes.

The parties thereafter engaged in various discovery, including the taking of Ms. Estes' deposition, the admission of various attorneys *pro hac vice*, and the securing of a protection order from the state court for various matters asserted by Valspar to be proprietary and confidential.

On June 1, 2009, Valspar moved for summary judgment against State Farm in the state court. One of the grounds asserted by Valspar in favor of summary judgment against State Farm is that State Farm's state law claims against Valspar are preempted by federal law. No ruling by the state court appears of record in these proceedings.

**B.     The Settlement Between State Farm and Bonnie Estes**

On June 9, 2009, a mediation between all three parties was had. Neither Valspar nor Bonnie Estes settled their cross-claims against one another. State Farm did not settle its claim against Valspar. However, State Farm did enter

into a <u>Pierringer</u> release with Ms. Estes.[2]  As a result of the release between

State Farm and Ms. Estes, Ms. Estes was never dismissed from the state court

action.  Indeed, under existing South Dakota law, it is doubtful that plaintiff

and Ms. Estes could have obtained an order of the state court dismissing

Ms. Estes from the lawsuit due to the existing cross claims between Ms. Estes

and Valspar.  <u>See</u> <u>Shaull v. Hart</u>, 327 N.W.2d 50, 54 (S.D. 1982) (holding that

the trial court did not err in refusing to dismiss defendant with whom plaintiff

had settled because the remaining defendant had asserted a cross-claim and

dismissal could have deprived the remaining defendant of the opportunity to

have the jury apportion fault between itself and the settling defendant);

<u>Schoniger v. Logan</u>, 40 S.D. 30, 166 N.W. 226 (1918) (plaintiff has no right to

voluntary dismissal where defendant has asserted a counterclaim or other valid

claim to affirmative relief).

The release between State Farm and Ms. Estes contained the following

provisions.  Ms. Estes and her insurer agreed to pay State Farm $250,000.  <u>See</u>

Docket No. 10-2.  In return, State Farm agreed to release both Ms. Estes and

her insurer from all liability to State Farm and Ms. Policky as a result of the

June 28, 2005, fire.  <u>Id.</u>  In addition, State Farm agreed to indemnify Ms. Estes

for any loss, damage, or expense occasioned by any claims asserted against

---

[2]The name of the release derives from the decision in <u>Pierringer v. Hoger</u>,
124 N.W.2d 106 (Wis. 1963).

4

Ms. Estes by Valspar or any third party as a result of the fire.  Id.  Finally,

State Farm agreed that any damages it recovered against Valspar for the fire

would be off-set by the $250,000 paid to State Farm by Ms. Estes, or by the

sum the jury determined to be Ms. Estes' *pro rata* share of the damages,

whichever sum was larger.  Id.

The written memorialization of this release between State Farm and

Ms. Estes was not signed until July 1, 2009.  Id.  Prior to that date, Valspar

was orally notified of the agreement reached by State Farm and Ms. Estes.  See

Docket No. 12.  Based upon this oral notification of a still-oral agreement,

Valspar removed the action from state court to this court, alleging that there

was complete diversity of citizenship among the parties and that Ms. Estes'

citizenship was no longer of any moment because State Farm had settled with

her.  See Docket No. 1.

State Farm moved to remand this matter back to state court on July 15,

2008.  Valspar resists the motion, arguing that removal was proper.

## DISCUSSION

### A.    General Law Applicable to Removal of Actions from State Court

Resolution of State Farm's motion requires the examination of several

statutes.  Under 28 U.S.C. § 1332, this court has original jurisdiction of civil

matters where the parties have completely diverse citizenship and the amount

in controversy is greater than $75,000.  See 28 U.S.C. § 1332(a).

Federal district courts are also granted "removal jurisdiction." See 28 U.S.C. § 1441. That is, lawsuits that are begun in state court may, under some circumstances, be "removed" to federal court if the prerequisites for federal court jurisdiction may be met, along with other requirements. Id.

"The right to remove a case from a state to a federal court is purely statutory and therefore its scope and the terms of its availability are entirely dependent on the will of Congress." 14B Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice & Procedure, §3721, 285-86 (3d ed. 1998). The removal statues are to be strictly construed because they are in derogation of state governments. Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 109 (1941). However, because an order remanding a case back to state court is not appealable, federal courts should be cautious about remanding so that they do not deprive a removing defendant of its statutory right to a federal forum. 14B Federal Practice & Procedure, § 3721, at 352.

This court's original jurisdiction in diversity cases is broader than its removal jurisdiction in diversity cases. Compare 28 U.S.C. § 1332, with 28 U.S.C. § 1441. This court has removal jurisdiction over matters that it would have had diversity jurisdiction under § 1332 had the action been filed in federal court originally *only* if none of the defendants is a resident of the state in which the state court action is pending at the time removal is sought. See 28 U.S.C.

§ 1441(a) and (b).[3]  Thus, assuming complete diversity of citizenship as between all plaintiffs and all defendants, an action in which a South Dakota citizen is a defendant may be filed originally in federal district court for the District of South Dakota, but if it is first filed in South Dakota state court, it may not be removed to the District of South Dakota.  Id.

When this matter was first filed in South Dakota state court, it was not removable because Bonnie Estes was a named defendant and she is a citizen of the state of South Dakota.  Thus, under § 1441(b), removal on the basis of diversity of citizenship was not allowed.  See 28 U.S.C. § 1441(b).

However, if a case presented by a plaintiff's "initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable. . . ."  See 28 U.S.C. § 1446(b).  In no case may a state court action be removed to federal court where more than one year has passed after commencement of the action.  Id.  Here,

_____

[3]The difference between original diversity jurisdiction and removal jurisdiction based on diversity is explained by the policy supporting removal jurisdiction in the first place:  removal jurisdiction was created to "protect nonresidents from the local prejudices of state courts."  14B Federal Practice & Procedure, § 3721, page 289.  Thus, a nonresident defendant is entitled to remove his case to federal court, assuming the basis for diversity jurisdiction is present.  A defendant sued in state court in his own home state is not in danger of being affected by xenophobic prejudices, and, thus, Congress did not provide removal jurisdiction for such defendants.

Valspar removed this matter to federal court within 30 days of learning of the oral settlement agreement between State Farm and Ms. Estes and prior to the one-year period following commencement of the action.

Once a case is removed to federal district court, any motion to remand the matter back to state court must be made within 30 days of the notice of removal. See 28 U.S.C. § 1447(c). Valspar filed its notice of removal on June 17, 2009, (see Docket No. 1), and State Farm moved to remand on July 15, 2009, (see Docket No. 9). Thus, State Farm's motion to remand was timely under this statute as only 28 days had elapsed between removal and the motion to remand. The party opposing a motion to remand, that is, the party who removed the action, has the burden of establishing the existence of federal subject matter jurisdiction. Central Iowa Power Co-op v. Midwest Independent Transmission System Operator, Inc., 561 F.3d 904, 912 (8th Cir. 2009). All doubts as to the existence of federal jurisdiction are to be resolved in favor of remand. Id.; Bates v. Missouri & Northern Arkansas Railroad Co., 548 F.3d 634, 638 (8th Cir. 2008).

The question presented by State Farm's motion to remand is this: can an action that was not removable at its inception because of the presence of a defendant who is a citizen of the state in which the state court action is pending become removable upon the entering into of an oral settlement agreement with that defendant where, at the time removal is sought, (1) no

written settlement agreement has yet been executed by the settling defendant, (2) no amended complaint or other pleading has been filed dismissing the settling defendant, and (3) no order by the state court has been issued concerning the presence or deletion of the settling defendant in the action.

State Farm argues that removal is not proper absent formal dismissal of Bonnie Estes from the lawsuit.  State Farm also argues that Valspar's notice of removal was not proper because Bonnie Estes did not join in the notice of removal.

Valspar argues that the fact of State Farm's settlement with Bonnie Estes is sufficient to render removal of this action proper.  As to the lack of any formality recognizing Ms. Estes' departure from this lawsuit, Valspar makes two arguments: (1) it is not necessary for the settlement agreement to have been executed or for an order dismissing Ms. Estes from the lawsuit to have been issued; and (2) even if Ms. Estes' presence in the lawsuit is not to be ignored, the court should "realign" her with State Farm and, thus, reach the conclusion that this court has jurisdiction in this matter.

**B.    Whether Ms.Estes is Still a Party to This Lawsuit**

Whether the elements of removal jurisdiction have been satisfied is to be determined with reference to federal law.  As the Supreme Court has stated:

> The removal statute which is nationwide in its operation, was intended to be uniform in its application, unaffected by local law definition or characterization of the subject matter to which it is to be applied.  Hence the Act of Congress must be construed as

setting up its own criteria, irrespective of local law, for determining in what instances suits are to be removed from the state to the federal courts.

Shamrock Oil & Gas Corp., 313 U.S. at 104. The Supreme Court has stated that federal law, not state law, determines who is a plaintiff and who is a defendant for purposes of removal jurisdiction. Chicago, R.I. & P.R. Co. v. Stude, 346 U.S. 574, 580 (1954). A state court's "procedural provisions cannot control the privilege o removal granted by the federal statute." Id.

However, state law does govern substantive rules of decision in a diversity suit, whether that suit is filed with a federal district court initially, or whether the suit is removed to federal court from state court. See Erie Railroad Co. v. Tompkins, 304 U.S. 64, 77-80 (1938); 14B Federal Practice & Procedure, § 3723, at 564.

It is a "cardinal rule" of removal jurisdiction that "only defendants may remove and all defendants must join in the notice of removal." 14B Federal Practice & Procedure, § 3723, at 563. Removability is determined on the basis of the record before the court at the time the defendant files the notice of removal. Id. at 568-69; Salem Trust Co. v. Manufacturers' Finance Co., 264 U.S. 182, 189-90 (1924).

In determining whether diversity of citizenship exists, the court may disregard dispensable parties. Id. at 190. Nominal or formal parties may be disregarded by the court for purposes of the rule that all defendants must join

in the notice of removal.  14C <u>Federal Practice & Procedure</u>, § 3731, at 270 (3d ed. 1998).

The one-year statute of limitations in § 1446(b) is capable of manipulation by plaintiffs wishing to avoid federal jurisdiction, such as the case where a plaintiff settles with a diversity-destroying defendant only after one year from the commencement of the action in state court.  14C <u>Federal Practice & Procedure</u>, § 3732, at 344.  The fact that the plaintiff may be manipulating the system does not enter into most courts' strict application of the one-year deadline.  <u>Id.</u>

"Although the requisite notice [under § 1446(b)] may be communicated in either a formal or informal manner, the communication nevertheless should still be in writing, and oral statements often will not qualify as constituting notice that is provided by an 'other paper' that will trigger removability under the second paragraph of Section 1446(b)."  14C <u>Federal Practice & Procedure</u>, § 3732, at 310.  "A limited exception to this principle is that a renewed period of removability can be triggered by oral statements made in the courtroom during the course of the action."  <u>Id.</u> at 310-11.

One question presented by the posture of this case is whether Bonnie Estes is to be considered as a party defendant in this matter at the time Valspar removed.  "A party whose presence in the action would destroy diversity must be dropped formally as a matter of record to permit removal to

federal court. It is insufficient, for example, that service of process simply has not been made on a nondiverse party; the case may not be removed until that party actually has been dismissed from the case." 14B Federal Practice & Procedure, § 3723, at 585-87.

Valspar's arguments that the court should disregard Ms. Estes as a party are unavailing. This court must determine its basis for removal jurisdiction on the basis of the state court record at the time of removal. 14B Federal Practice & Procedure, § 3723, at 568-69; Salem Trust Co., 264 U.S. at 189-90. At the time Valspar removed, and indeed, at the present, Ms. Estes has never been formally dismissed as a party from the lawsuit. It is clear, furthermore, that under South Dakota state law, even if State Farm had moved to voluntarily dismiss Ms. Estes prior to the time Valspar removed this case, the state court could not have granted State Farm's motion. That is because Valspar had asserted a cross-claim against Ms. Estes and State Farm could not act unilaterally to extinguish Valspar's claim. Shaull, 327 N.W.2d at 54; Schoniger, 40 S.D. at ___, 166 N.W. at 228. The fact that, under the Pierringer release State Farm agreed to indemnify Ms. Estes if the jury found against her on Valspar's cross-claim does not obviate or extinguish that cross-claim. Thus, the court rejects Valspar's invitation to ignore Ms. Estes altogether as a party in this case when examining the basis for removal jurisdiction.

This court's conclusion is borne out by the Supreme Court's decision in Caterpillar, Inc. v. Lewis, 519 U.S. 61 (1996). In that case, a Kentucky plaintiff initiated a personal injury lawsuit in Kentucky state court, alleging state law claims against both a Kentucky defendant and Caterpillar, Inc., a nonresident defendant, thus making the case nonremovable initially. Id. at 64-66. Thereafter, the plaintiff's workers' compensation insurer intervened in the action and asserted a subrogation claim against both the nonresident defendant and the Kentucky defendant. Id. Thereafter, the plaintiff settled his claim against the Kentucky defendant and, with one day to spare under the one-year deadline of § 1446(b), Caterpillar removed the case to federal district court on the basis of diversity jurisdiction. Id.

The plaintiff moved to remand, acknowledging that he had settled his claim with the Kentucky defendant, but arguing that diversity jurisdiction did not exist because the Kentucky defendant had not been formally dismissed from the lawsuit and the worker's compensation insurance company's subrogation claim against the Kentucky defendant remained extant despite the plaintiff's settlement. Id. The issue before the Supreme Court was different from the issue presented to this court, but the Court noted that its analysis was premised on the "given" fact that the district court had erred in denying

the plaintiff's motion for remand because, in fact, no basis for removal existed when Caterpillar removed the case.  Id. at 70.[4]

In this case, like the Caterpillar case, the settling, resident defendant whose presence destroys complete diversity has not been formally dismissed from this lawsuit.  Also like Caterpillar, the resident defendant cannot be dismissed because there are claims asserted against it by persons other than the settling plaintiff–in Caterpillar it was the workers compensation insurance company, and here it is Valspar itself that has an independent claim.  Thus, this court concludes that Bonnie Estes is still a bona fide party to this lawsuit and her presence cannot simply be overlooked for purposes of analyzing diversity removal jurisdiction.  Cf. Stamm v. American Telephone & Telegraph Co., 129 F. Supp. 719, 720-21 (W.D. Mo. 1955) (court would not ignore presence of resident defendant for purposes of diversity removal jurisdiction where resident defendant was named as a party, but had never been served with the summons and complaint).  See also Universal Ins. Co. v. Hartford Fire Ins. Co., 556 F. Supp. 2d 68, 69-71 (D.P.R. 2008) (no removal allowed without formal dismissal of resident defendant); Hutton v. Temple University, 703 F.

_____

[4]The issue decided by the Court was whether, once a district court erroneously accepted removal where the necessary diversity of citizenship did *not* exist, could that error be "cured" if the necessary diversity of citizenship materialized prior to the time the district court entered final judgment in the case.  Caterpillar, Inc., 519 U.S. at 64, 70.  The Court answered the question in the affirmative.  Id. at 64, 77-78.

Supp. 391, 391-92 (E.D. Penn. 1989) (same); Mertan v. E.R. Squibb & Sons, Inc., 581 F. Supp. 751, 752 (C.D. Cal. 1980) (same).[5]

**C.     If Bonnie Estes is Still a Party to This Lawsuit, May This Court Realign the Parties**

"Before determining removability under Section 1441(b) on the basis of diversity of citizenship jurisdiction, the district court will realign the parties according to their true interests in the outcome of the litigation, as it would were the case brought in the federal court originally."  14B Federal Practice & Procedure, § 3723, pages 606-608.  "It will then consider the citizenship of all parties validly joined, and those who should be joined, whether they are described as indispensable, necessary, or proper parties."  Id. at 608.

"Moreover, in determining whether diversity of citizenship exists for removal jurisdiction purposes, the district court will disregard–as it does in cases originated in a federal court–nominal or formal parties . . ."  14B Federal Practice & Procedure, § 3723, page 612.

---

[5]In the Universal Ins. Co., Hutton, and Mertan cases, the court remanded for lack of complete diversity due to the presence of the settling defendant in the case with no formal dismissal in state court.  The court does not rely entirely on these cases in determining State Farm's motion to remand in this case because none of these three cases discuss the argument raised here that the settling defendants, if still parties to the action, must be realigned with the plaintiff for purposes of analyzing diversity.  Because that argument *was* raised in this case, the court does not find Universal Ins. Co., Hutton, and Mertan to be dispositive but goes on to address the realignment argument.

The court concludes that, upon State Farm and Ms. Estes entering into the Pierringer release, Ms. Estes became a *de facto* plaintiff in this matter. State Farm and Ms. Estes both have the same vested interest in now minimizing any liability of Ms. Estes and maximizing any liability of Valspar. State Farm's potential offset as a result of the jury's verdict and its potential liability to indemnify Ms. Estes both inspire State Farm to maximize Valspar's role in the events leading to the fire at Ramona Policky's home, and to minimize Ms. Estes' role in those events.  See Mancari v. AC & S Co., 683 F. Supp. 91, 93 (D. Del. 1988) (when plaintiff settles with resident defendant and resident defendant remains in lawsuit only for purpose of determining cross-claims, these settling defendants should be realigned).

If Ms. Estes is realigned as a party plaintiff, the fact that Ms. Estes is a citizen of the state of South Dakota no longer presents an impediment to removal under 28 U.S.C. § 1441(b).  Nor is her failure to join in the notice of removal an impediment to removal, for the judicially-made rule is that all defendants must join in removal.  The rule does not extend to plaintiffs or to parties who are *de facto* plaintiffs such as Ms. Estes.  However, realigning Ms. Estes as a party plaintiff does not finally answer the question as to whether this court should exercise removal jurisdiction over this case.  There remains one issue to address.

**D. Whether the Requirement Under § 1446(b) of the Receipt of a Paper Has Been Satisfied**

Even realigning Ms. Estes as a plaintiff, the parties are in agreement that the complaint originally filed by State Farm was not removable because of her presence, and the fact that she was a *bona fide* defendant at the time and also a citizen of South Dakota. Therefore, under § 1441(b), neither Ms. Estes nor Valspar could have removed. Accordingly, since the case was not removable at its inception, whether it can now be removed is governed by 28 U.S.C. § 1446(b). Although quoted above, the governing language of this section deserves repeating here:

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days *after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper* from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title [diversity jurisdiction] more than 1 year after commencement of the action.

See 28 U.S.C. § 1446(b).

State Farm argues that, because Valspar received no "amended pleading, motion, order or other paper" prior to filing its notice of removal, removal of this case is not proper under § 1446(b). Valspar urges the court to look at the reality of the settlement and disregard the "formality" of receiving an actual document commemorating the settlement.

Before embarking on the discussion of the merits of this issue, the court takes note of the realities of the situation faced by Valspar. The one-year deadline for removing this case from state court was set to run on June 26, 2009. The settlement between State Farm and Ms. Estes was reached on or shortly after June 9, 2009. Valspar had to act to remove this case prior to June 26, 2009, or be forever barred from removing. See 28 U.S.C. § 1446(b). Valspar did not have the luxury of waiting to receive a written copy of the agreement, which would have satisfied the requirement of §1446(b) of the receipt of some kind of document, because that document might not materialize until after the June 26, 2009, removal deadline. As it turns out, the settlement agreement in fact was not executed until July 1, 2009.

Nor is State Farm's motive in this sequence of events material or relevant. State Farm may have been motivated to delay the drafting and execution of the release with Ms. Estes so as to prevent removal. Then again, timing of the execution of the release may have been totally innocent and explainable without reference to the removal deadline. It is certainly not unusual for the final drafting and execution of a settlement agreement to take longer than a month following the reaching of an oral agreement. In either case, the reasons or motive behind the delay are irrelevant.

Because orders remanding a case back to state court are not appealable, there is a frustrating lack of authority from appellate courts addressing the

interpretation of the document-received requirement in § 1446(b). At the outset, the court notes that two categories of cases must be distinguished on the facts from the facts of the present case.

First, as the Wright and Miller treatise on federal civil procedure points out, one exception to the document-received requirement has been carved out by courts to cover the situation where the plaintiff voluntarily dismisses claims against a resident defendant orally while the case is actually being tried in a state court. 14C <u>Federal Practice & Procedure</u>, § 3732, page 310-11. Thus, removal has been allowed on the basis of the plaintiff's oral relinquishment of claims when the case is in the midst of a trial. <u>See e.g.</u> <u>Powers v. Chesapeake & Ohio Ry., Co.</u>, 169 U.S. 92, 98-102 (1898) (allowing removal on basis of diversity where plaintiff "discontinued" claims against resident defendants when his case was called for trial in state court); <u>Mancari v. AC & S Co., Inc.</u>, 683 F. Supp. 91, 92-95 (D. Del. 1988) (where plaintiff settled with resident defendants in the midst of trial, the court stated that "[i]t is not required that dismissal of the nondiverse defendants be in writing or be formalized."); <u>First Nat'l. Bank v. Johnson & Johnson</u>, 455 F. Supp. 361, 362 and 362 n. 1 (E.D. Ark. 1978) (stating that, where plaintiff moved to dismiss claim against resident defendant immediately before submission of the case to the jury in state court, the oral motion of the plaintiff and the oral order of the state court granting the motion was sufficient to satisfy § 1446(b) although no document

was created).  Presumably, this exception to the document-received requirement was created due to the exigencies of trial:  if strict compliance with the requirement of a document being received were enforced, defendants could never remove a case during trial because the case would often proceed to a verdict before the plaintiff or the court could excuse themselves from the trial long enough to create a document.

The second category of cases the court distinguishes are cases where the court allowed removal without discussing the document-received requirement of § 1446(b), but the court's discussion of the facts demonstrates that there clearly was a document received by the defendant in the case.   See e.g. Estate of Martineau v. Arco Chemical Co., 203 F.3d 904, 909-10(5th Cir. 2000) (allowing removal where removing defendant received a document in the form of a letter settlement agreement and filed notice to remove thereafter); Ratcliff v. Fibreboard Corp., 819 F. Supp. 584, 585-87 (W.D. Tex. 1992) (allowing removal where removing defendant received five letter agreements memorializing the settlements between plaintiffs and resident defendants).  Cf. Central Iowa Agri-Systems v. Old Heritage Advertising and Publishers, Inc., 727 F. Supp. 1304, 1305 (S.D. Iowa 1989) (holding that plaintiff's demand letter establishing the amount in controversy was an "other paper" under § 1446(b) establishing defendant's right to remove on the basis of diversity jurisdiction).

In interpreting § 1446(b), courts which have discussed the document-received requirement have concluded that the document referenced by that statute must be a document generated within the state court litigation itself. Johansen v. Employee Benefit Claims, Inc., 668 F. Supp. 1294, 1296-97 (D. Minn. 1987); Putterman v. Daveler, 169 F. Supp. 125, 129 (D. Del. 1958).

There are three cases the court discusses at some length because they do not fit neatly into one of the two categories of cases cited above that are distinguishable. In Chohlis v. Cessna Aircraft Co., 760 F.2d 901 (8th Cir. 1985), a plaintiff brought a wrongful death action against a pilot and the manufacturer of the plane he was piloting. Id. at 903. The plaintiff and the pilot shared the same state citizenship. Id. at 903 n.2. When the plaintiff settled her claim with the pilot, the plane manufacturer removed the action to federal court. Id. at 903. On appeal, the plaintiff argued that the district court erred in taking the case because the pilot had not been dismissed from the state court suit at the time of removal. Id. at 903 n.2. The Eighth Circuit dispensed with this argument in a single foot note, stating that the "question [as to removal] was properly decided by a magistrate, who concluded that a settlement between [the plaintiff] and the pilot's estate was final enough to support removal." Id. Although the opinion reveals that the pilot was never dismissed from the state court action prior to removal, the opinion never discussed whether there was any document received by Cessna memorializing

the settlement or what facts the magistrate judge relied upon in determining

the settlement was "final enough" to allow removal.  Id.  Thus, the Chohlis

opinion, though a rare appellate opinion and one that is binding on this court,

is not conclusive because there simply are not enough facts revealed in the

opinion to determine if it is applicable to the precise issue in this case.

Likewise, the case of Gable v. Chicago, M., St. P. & P.R. Co., 8 F. Supp.

944 (W.D. Mo. 1934), is unilluminating due to the opinion's lack of specificity

on the facts.  In that case, the plaintiff entered into a settlement with the

resident defendant, leading the nonresident defendant to remove the case prior

to the formal dismissal of the resident defendant from the state action.  Id. at

945-46.  The plaintiff moved to remand on the basis that the resident

defendant was still a party.  Id.  The court declined to remand, noting that the

cause of action stated against the resident defendant had been extinguished,

regardless of whether that defendant had been formally dismissed.  Id.  The

opinion never reveals whether a document of any kind was received by the

removing defendant, thus triggering the right to remove under § 1446(b).  Id. at

945-47.  Indeed, the opinion dates from 1934 and never recites the precise

language of the removal statute, so it is difficult to tell whether the 1934

predecessor of § 1446(b) is similar to the current statute.  Id.

Finally, Valspar cites the case of Bumgardner v. Combustion

Engineering, Inc., 432 F. Supp. 1289 (D.S.C. 1977), cited by the Chohlis case

in its footnote.  In the Bumgardner case, the plaintiff and a resident defendant

secretly settled their claims without notifying the other parties.  Id. at 1290-91.

That resident defendant had asserted cross-claims against the nonresident

defendants.  Id.  At a subsequent deposition of a key witness, the attorney for

the plaintiff gave the attorney for the resident defendant a handwritten list of

questions to ask the deponent.  Id.  During the course of the deposition, the

attorneys for the nonresident defendants became suspicious because the

questions being asked by the resident defendant were so favorable to the

plaintiff.  Id.  They confronted the attorney for the resident defendant and he

revealed the existence of the settlement agreement and showed the other

defense attorneys the list of questions that the plaintiff's attorney had given

him.  Id.  The nonresident defendants immediately petitioned for removal.  Id.

at 1291.  The Bumgardner case does not discuss the document-received

requirement of § 1446(b), although the factual recitation makes clear that the

removing defendants did receive a document–the handwritten list of questions

from the plaintiff's attorney.  Id. at 1290-92.  The holding of the Bumgardner

court, relying on the earlier Gable decision, was that the case was removable

upon the settlement, regardless of whether the resident defendant had been

formally dismissed from the state action at the time of removal.  Id.

The holdings of the Bumgardner, Chohlis, and Gable cases are

unexceptional and do not dictate the result in this case.  They stand for the

proposition that removal can still be had even if the settling, resident defendant has not been formally dismissed from the case. Although these cases do not discuss realignment, as can be seen from the court's discussion in subsections B and C of this report, the failure to formally dismiss a settling resident defendant does not pose an impediment to removal because that defendant can and should be realigned with the plaintiff or realigned as a third-party defendant (in which case citizenship is not taken into account). These three cases do not speak to the requirement of § 1446(b) that a document of some kind must be received by the removing defendant in order to trigger the right to remove. Because of the paucity of facts recited in <u>Chohilis</u> and <u>Gable</u>, the cases cannot be said to stand for the proposition that the document-received requirement of § 1446(b) can be waived (except, as has been seen in the above discussion, when the basis for removal comes about during a state court trial).

This court concludes that State Farm's motion to remand must be granted. The court bases this conclusion on the following factors. The right of removal is wholly statutory and must, therefore, depend on an interpretation of the words of the statute. 14B <u>Federal Practice & Procedure</u>, § 3721, pages 285-86. The statute–§1446(b)–requires that a document be received by the removing defendant before the right to remove is triggered. <u>See</u> 28 U.S.C. § 1446(b). Also, the statute is to be strictly construed due to comity concerns

because the right to remove is in derogation of the power of state courts to hear cases within their jurisdiction. <u>Shamrock Oil & Gas Corp.</u>, 313 U.S. at 109.

Finally, the burden is on Valspar as the removing party to unequivocally demonstrate that this court has removal jurisdiction. <u>Central Iowa Power Coop.</u>, 561 F.3d at 912. All doubts as to whether removal jurisdiction exists are to be resolved in favor of remand. <u>Id.</u>; <u>Bates</u>, 548 F.3d at 638. Valspar has demonstrated that a case can be removed prior to formal dismissal of a settling defendant through realignment. However, Valspar has failed to cite the court to a single case where a court clearly and unequivocally held that the document-received requirement of § 1446(b) was not met, and was waived by the federal court, where removal took place in a context outside of trial in the state court. Based on the above discussion, then, this court respectfully recommends that this case be remanded back to South Dakota state court.

**E.     Valspar Did Not Waive Its Right to Remove and There is No Federal Question Jurisdiction**

As a final matter, and for the sake of completeness for the review of this report and recommendation by the district court, this magistrate judge addresses one additional issue not raised by the parties. "A state court defendant may lose or waive the right to remove a case to a federal court by taking some substantial offensive or defensive action in the state court action indicating a willingness to litigate in that tribunal before filing a notice of removal with the federal court, such as asserting a counterclaim or engaging in

pretrial discovery." 14B <u>Federal Practice & Procedure</u>, § 3721, at 363-65.

Here, Valspar filed a motion for summary judgment in state court prior to removal. That might ordinarily act as a waiver by Valspar of its right to remove, particularly if Valspar had awaited resolution of its motion by the state court prior to removing. <u>Id.</u> However, here, although Valspar filed a motion for summary judgment in state court, that act did not operate as a waiver of Valspar's right to remove because that motion was filed *before* the basis for removal came into existence. Valspar could not waive a right that it did not yet have at the time it filed the summary judgment motion.

Also, although one of the bases of Valspar's summary judgment motion in state court was federal preemption, this court may not take jurisdiction of this case on the basis of federal question jurisdiction under 28 U.S.C. § 1331. It is well-settled that "a federal defense, including a preemption defense, does not provide a basis for removal, 'even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue in the case.' " <u>Central Iowa Power Co-op v. Midwest Independent Transmission System Operator, Inc.</u>, 561 F.3d 904, 912 (8th Cir. 2009) (quoting <u>Caterpillar Inc. v. Williams</u>, 482 U.S. 386, 393 (1987)). That is because removal on the basis of federal question jurisdiction must be judged from the face of the plaintiff's properly pleaded complaint. <u>Id.</u> (citing <u>Caterpillar, Inc.</u>, 482 U.S. at 392). If no federal question jurisdiction appears

on the face of the complaint, removal jurisdiction on the basis of the presence of a federal question will not be available.  Id.

State Farm's complaint reveals no federal question.  Thus, the fact that Valspar is asserting a federal preemption defense does not give rise to removal on the basis of a federal question.  Id.

## CONCLUSION

Based on the foregoing discussion, this court recommends that State Farm's motion to remand this case back to South Dakota state court [Docket No. 9] be granted.

## NOTICE TO PARTIES

The parties have ten (10) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1)(B), unless an extension of time for good cause is obtained.  See also Fed. R. Civ. P. 72(b)(2).  Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Objections must be timely and specific in order to require de novo review by thedistrict court.  See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

Dated November 6, 2009.

BY THE COURT:

/s/ Veronica L. Duffy

VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE