UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY, | ) ) ) | CIV. 09-5056-JLV |
| Plaintiff | ) ) | REPORT AND RECOMMENDATION ON DEFENDANT'S OBJECTIONS TO |
| vs. | ) ) | RECOMMENDED GRANT OF PLAINTIFF'S MOTION |
| THE VALSPAR CORPORATION, INC., a Delaware corporation; and BONNIE ESTES, an individual, | ) ) ) ) | TO REMAND [DOCKET 9, 17] |
| Defendants. | ) ) | |

## INTRODUCTION

This matter is before the court on the Notice of Removal filed by

defendant The Valspar Corporation, Inc. (hereinafter "Valspar"). Previously,

this court issued a report and recommendation that plaintiff State Farm Fire

and Casualty Company's (hereinafter "State Farm") motion to remand this

matter back to state court [Docket No. 9] should be granted. Thereafter,

Valspar filed objections which included the assertion of new facts in resistance

to remand. [Docket No. 17]. Because the objections contained new facts, and

at Valspar's request, the district court, the Honorable Jeffrey L. Viken, referred

Valspar's objections to this magistrate judge for a report and recommendation

pursuant to 28 U.S.C. § 636(b)(1)(B). See Docket No. 19.

## FACTS

### A.  Proceedings in State Court

On June 28, 2005, Bonnie Estes, a resident of Rapid City, South Dakota, helped her neighbor, Ramona Policky, stain the deck attached to Ms. Policky's home, using a product manufactured by Valspar.  Ms. Estes allegedly left some rags and/or brushes contaminated with the Valspar product sealed in plastic bags on Ms. Policky's deck.  The bag ignited, starting a fire which caused "hundreds of thousands of dollars"[1] in damage to Ms. Policky's real and personal property, which was insured by State Farm.

State Farm paid Ms. Policky's claim under her insurance policy with it, and then brought this subrogation action against Ms. Estes and Valspar in South Dakota state court for the Seventh Judicial Circuit on June 26, 2008.  State Farm alleged a single claim of negligence against Ms. Estes.  Against Valspar, State Farm asserted claims of negligence in failing to warn, breach of the warranties of merchantability and fitness for a particular purpose, and strict liability for failure to warn.

---

[1]The allegation as to the amount of damage caused by the fire is taken from State Farm's complaint against the defendants filed in state court.  For purposes of the instant motion, no party has taken issue with this representation.  Therefore, for purposes of determining the court's jurisdiction under 28 U.S.C. § 1332, the court assumes that the amount in controversy element has been met.

In Valspar's notice of removal, State Farm is alleged to be a citizen of the state of Illinois, the state of its incorporation, and is alleged to have its principal place of business in Illinois as well.  See Docket No. 1.  Valspar alleges that it is a citizen of Delaware, the state of its incorporation, and also of Minnesota, the place of its principal place of business.  Id.  In opposing removal, State Farm does not deny these allegations as to citizenship, so the court takes them to be true for purposes of resolving the issues raised by State Farm's motion to remand and Valspar's objections to this court's recommendation that the motion be granted.

Ms. Estes answered State Farm's complaint in state court, denying liability and asserting a cross claim against Valspar.  Valspar answered State Farm's complaint, also denying liability and also asserting a cross claim against Ms. Estes.

The parties thereafter engaged in various discovery, including the taking of Ms. Estes' deposition, the admission of various attorneys *pro hac vice*, and the securing of a protection order from the state court for various matters asserted by Valspar to be proprietary and confidential.

On June 1, 2009, Valspar moved for summary judgment against State Farm in the state court.  One of the grounds asserted by Valspar in favor of summary judgment against State Farm is that federal law preempts State

Farm's state law claims against Valspar.  No ruling by the state court appears of record in these proceedings.[2]

## B.    The Settlement Between State Farm and Bonnie Estes

On June 9, 2009, a mediation between all three parties was had.  Neither Valspar nor Bonnie Estes settled their cross-claims against one another, and State Farm did not settle its claim against Valspar.  However, State Farm did enter into a _Pierringer_ release with Ms. Estes.[3]  However, Ms. Estes was never dismissed from the state court action as a result of the release between State Farm and Ms. Estes.  Indeed, under existing South Dakota law, it is doubtful that plaintiff and Ms. Estes could have obtained an order of the state court dismissing Ms. Estes from the lawsuit due to the existing cross claims between

---

[2]Although one of the bases of Valspar's summary judgment motion in state court was federal preemption, this court may not take jurisdiction of this case on the basis of federal question jurisdiction under 28 U.S.C. § 1331.  It is well-settled that "a federal defense, including a preemption defense, does not provide a basis for removal, 'even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue in the case.' " _Central Iowa Power Co-op v. Midwest Independent Transmission System Operator, Inc._, 561 F.3d 904, 912 (8th Cir. 2009) (quoting _Caterpillar Inc. v. Williams_, 482 U.S. 386, 393 (1987)).  That is because removal on the basis of federal question jurisdiction must be judged from the face of the plaintiff's properly pleaded complaint.  _Id._  (citing _Caterpillar, Inc._, 482 U.S. at 392).  If no federal question jurisdiction appears on the face of the complaint, removal jurisdiction on the basis of the presence of a federal question is not available.  _Id._

[3]The name of the release derives from the decision in _Pierringer v. Hoger_, 124 N.W.2d 106 (Wis. 1963).

Ms. Estes and Valspar.  See Shaull v. Hart, 327 N.W.2d 50, 54 (S.D. 1982) (holding that the trial court did not err in refusing to dismiss defendant with whom plaintiff had settled because the remaining defendant had asserted a cross-claim and dismissal could have deprived the remaining defendant of the opportunity to have the jury apportion fault between itself and the settling defendant); Schoniger v. Logan, 40 S.D. 30, 166 N.W. 226 (1918) (plaintiff has no right to voluntary dismissal where defendant has asserted a counterclaim or other valid claim to affirmative relief).

The release between State Farm and Ms. Estes contained the following provisions.  Ms. Estes and her insurer agreed to pay State Farm $250,000.  See Docket No. 10-2.  In return, State Farm agreed to release both Ms. Estes and her insurer from all liability to State Farm and Ms. Policky as a result of the June 28, 2005, fire.  Id.  In addition, State Farm agreed to indemnify Ms. Estes for any loss, damage, or expense occasioned by any claims asserted against Ms. Estes by Valspar or any third party as a result of the fire.  Id.  Finally, State Farm agreed that any damages it recovered against Valspar for the fire would be off-set by the $250,000 paid to State Farm by Ms. Estes, or by the sum the jury determined to be Ms. Estes' *pro rata* share of the damages, whichever sum was larger.  Id.

Late on the afternoon that the mediation was held, June 9, 2009, counsel for Valspar e-mailed counsel for Ms. Estes, apologizing for having left

5

the mediation without saying good-bye to Ms. Estes and her lawyer.  See Docket No. 18-2.  Ms. Estes' lawyer responded as follows on the morning of June 10:  "No problem.  I enjoyed working with you on this case.  I will be interested to see how it all turns out."  Id.

That afternoon, June 10, counsel for Valspar e-mailed counsel for both State Farm and counsel for Ms. Estes, asking: "Gentlemen:  Could you please confirm whether a settlement was reached between State Farm and Ms. Estes and, if so, what the amount was?"  See Docket No. 18-3.  No written response, by e-mail or otherwise, was given by either addressee of this e-mail.

Instead, on June 11, 2009, State Farm's counsel and Valspar's counsel spoke by telephone.  In this telephone conversation, State Farm confirmed that it had settled its case against Ms. Estes pursuant to the above-discussed terms.

The written memorialization of this release between State Farm and Ms. Estes was not signed until July 1, 2009.  See Docket No. 10-2.  Prior to the execution of the release between Ms. Estes and State Farm, Valspar removed the action from state court to this court on June 17, 2009, alleging that there was complete diversity of citizenship among the parties and that Ms. Estes' citizenship was no longer of any moment because State Farm had settled with her.  See Docket No. 1.

State Farm moved to remand this matter back to state court on July 15, 2009.  See Docket No. 9.  Valspar resisted the motion, arguing that removal was proper.  This court issued a report and recommendation that State Farm's motion be granted because Valspar had not received a "copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable" as required by 28 U.S.C. § 1446(b).  See Docket No. 16.

In the original briefings on State Farm's motion, neither party mentioned the above e-mail received by Valspar from Ms. Estes' lawyer on June 10, 2009, as an "other paper" which would support removal.  This is because, although State Farm argued that the absence of the receipt of an "other paper" justified remand, that argument was raised only in State Farm's reply brief.  Valspar did not seek permission to file a sur-reply brief, so it never responded to this argument.

Valspar now objects to the remand of this case and urges the court to hold that the receipt of the June 10, 2009, e-mail suffices to satisfy the "other paper" requirement of § 1446(b).  State Farm opposes Valspar's objections.

## DISCUSSION

### A.    Whether It is Permissible to Consider New Evidence

State Farm objects to Valspar's proffer of the June 10, 2009, e-mail from Ms. Estes' counsel, arguing that Valspar should have argued the existence of

the e-mail prior to this court issuing its first report and recommendation. However, as already noted, State Farm itself never raised the "other paper" argument until its reply brief. The fact that the issue was not raised in State Farm's initial brief is sufficient good cause excusing Valspar's failure to address that argument in its response in opposition to State Farm's motion. Moreover, 28 U.S.C. § 636 specifically contemplates the receipt of additional evidence after the filing of a magistrate judge's report and recommendation in some cases.

A magistrate judge's authority to decide motions under § 636 is divided into two basic categories of pre-trial motions: dispositive motions and nondispositive motions. See 28 U.S.C. § 636(b)(1)(A) and (B). As to nondispositive motions, a magistrate judge may decide such a motion outright, subject to an appeal to the district court where the standard of review is "clearly erroneous or contrary to law." Id. at (A). Magistrate judges may also issue opinions on dispositive motions in civil and criminal cases, but they cannot decide such motions outright. Id. at (B). Instead, a magistrate judge to whom a dispositive motion is referred must proceed by filing a report and recommendation to the district court for the disposition of the motion. Id. As to a magistrate judge's report and recommendation on a dispositive motion, the standard of review by the district court is *de novo*. See 28 U.S.C. § 636(b)(1)(C). In addition, after the filing of a report and recommendation, the

statute specifically provides that the district court may receive further evidence on the motion and may recommit the matter to the magistrate judge.  Id.

Therefore, based on the above provisions and the remand order of the district court upon receipt of Valspar's objections, this court is specifically authorized to consider new evidence in the form of the June 10, 2009, e-mail. State Farm's objection to the consideration of the e-mail is overruled.

**B.      Whether Removal Was Proper Considering the E-mail**

**1.      General Principles Applicable to Removal**

The court will not recap the entire discussion from its prior report and recommendation concerning the law of removal and remand.  Instead, that discussion is incorporated by reference herein.  See Docket No. 16.  A few rules governing this area of the law are worth repeating here, however.  A federal district court's removal jurisdiction in a case founded on diversity jurisdiction is more narrow than the court's original diversity jurisdiction in cases filed in federal court in the first instance.  Compare 28 U.S.C. § 1332, with 28 U.S.C. §§ 1441, and 1446(b).

For example, a district court may not accept removal of a case in which one of the defendants is a resident of the state in which the district court sits, even though such a case could have permissibly been filed in federal court in

the first instance.  See 28 U.S.C. § 1441(a) and (b).[4]  Also, even though all the

requirements for diversity have been met, a case may not be removed to federal

court more than one year after it was filed in state court.  See 28 U.S.C.

§ 1446(b).

Because the right to remove is in derogation of the authority of state

courts to decide cases filed with them, and because the right to remove is

entirely statutory, the removal statutes are to be strictly construed.  Shamrock

Oil & Gas Corp. v. Sheets, 313 U.S. 100, 109 (1941); 14B Charles A. Wright,

Arthur R. Miller, & Edward H. Cooper, Federal Practice & Procedure, §3721,

285-86 (3d ed. 1998).  The party opposing a motion to remand–here,

Valspar–has the burden of establishing the existence of federal subject matter

jurisdiction.  Central Iowa Power Co-op  v. Midwest Independent Transmission

System Operator, Inc., 561 F.3d 904, 912 (8th Cir. 2009).  All doubts as to the

existence of federal jurisdiction are to be resolved in favor of remand.  Id.;

---

[4]The difference between original diversity jurisdiction and removal
jurisdiction based on diversity is explained by the policy supporting removal
jurisdiction in the first place:  removal jurisdiction was created to "protect
nonresidents from the local prejudices of state courts."  14B Charles A. Wright,
Arthur R. Miller, & Edward H. Cooper, Federal Practice & Procedure, §3721,
289 (3d ed. 1998).  Thus, a nonresident defendant is entitled to remove his
case to federal court, assuming the basis for diversity jurisdiction is present.  A
defendant sued in state court in his own home state is not in danger of being
affected by xenophobic prejudices, and, thus, Congress did not provide removal
jurisdiction for such defendants.  Id.

<u>Bates v. Missouri & Northern Arkansas Railroad Co.</u>, 548 F.3d 634, 638 (8th Cir. 2008).

First, it is helpful to clarify what is and what is not in dispute in this case. Neither party disputes that Ms. Estes and State Farm reached an agreement resolving State Farm's claims against Ms. Estes on June 9, 2009, although this agreement remained an oral agreement until July 1, 2009. This court so found in its original report and recommendation and neither party objected to that portion of the court's opinion.

Neither party objected to this court's conclusion that complete diversity exists in this case through the realignment of Ms. Estes as a party plaintiff post-settlement. Also, neither party objected to this court's conclusion that removal was proper even if Ms. Estes had not been formally dismissed from the lawsuit. Thus, these issues are not in dispute either.

What was placed in dispute by Valspar's objections are the following. First, whether a written document must be received establishing the basis for removal prior to a case being removed. Second, if receipt of such a written document is required, whether the June 10, 2009, e-mail from Ms. Estes' counsel to Valspar's counsel satisfies this requirement.

**2.      Whether Receipt of a Written Document is Required**

The presence of Ms. Estes, a resident of South Dakota, as a party defendant at the inception of this law suit rendered the case unremovable

initially.  See 28 U.S.C. § 1441(a).  Accordingly, since the case was not

removable at its inception, whether it can now be removed is governed by 28

U.S.C. § 1446(b).  That provision states as follows:

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days *after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper* from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title [diversity jurisdiction] more than 1 year after commencement of the action.

See 28 U.S.C. § 1446(b) (emphasis supplied).

State Farm argues that, because Valspar received no "amended pleading,

motion, order or other paper" prior to filing its notice of removal, removal of

this case is not proper under § 1446(b).  Valspar urges the court to look at the

reality of the settlement and disregard the "formality" of receiving an actual

document commemorating the settlement.

Before embarking on the discussion of the merits of this issue, the court

takes note of the realities of the situation faced by Valspar.  The one-year

deadline for removing this case from state court was set to run on June 26,

2009.  The settlement between State Farm and Ms. Estes was reached on or

shortly after June 9, 2009.  Valspar had to act to remove this case prior to

June 26, 2009, or be forever barred from removing.  See 28 U.S.C. § 1446(b).

The settlement agreement between State Farm and Ms. Estes was not executed

until July 1, 2009.

However, the court also notes that State Farm's motive in this sequence of events is not material or relevant. State Farm may have been motivated to delay the drafting and execution of the release with Ms. Estes so as to prevent removal (it protests that it was not). Then again, timing of the execution of the release may have been totally innocent and explainable without reference to the removal deadline. It is certainly not unusual for the final drafting and execution of a settlement agreement to take longer than a month following the reaching of an oral agreement. In either case, the reasons or motive behind the delay are irrelevant. The court also notes that, if State Farm *were* motivated to prevent removal, it could simply have scheduled the mediation for after the one-year deadline and ensured that removal could not take mplace.

Because orders remanding a case back to state court are not appealable, there is a frustrating lack of authority from appellate courts addressing the interpretation of the document-received requirement in § 1446(b). At the outset, the court notes that two categories of cases must be distinguished on their facts from the facts of the present case.

First, as the Wright and Miller treatise on federal civil procedure points out, one exception to the document-received requirement has been carved out by courts to cover the situation where the plaintiff voluntarily dismisses claims against a resident defendant orally while the case is actually being tried in a state court. 14C Federal Practice & Procedure, § 3732, page 310-11. Thus,

removal has been allowed on the basis of the plaintiff's oral relinquishment of claims when the case is in the midst of a trial.  See e.g. Powers v. Chesapeake & Ohio Ry., Co., 169 U.S. 92, 98-102 (1898) (allowing removal on basis of diversity where plaintiff "discontinued" claims against resident defendants when his case was called for trial in state court); Mancari v. AC & S Co., Inc., 683 F. Supp. 91, 92-95 (D. Del. 1988) (where plaintiff settled with resident defendants in the midst of trial, the court stated that "[i]t is not required that dismissal of the nondiverse defendants be in writing or be formalized."); First Nat'l. Bank v. Johnson & Johnson, 455 F. Supp. 361, 362 and 362 n. 1 (E.D. Ark. 1978) (stating that, where plaintiff moved to dismiss claim against resident defendant immediately before submission of the case to the jury in state court, the oral motion of the plaintiff and the oral order of the state court granting the motion was sufficient to satisfy § 1446(b) although no document was created).  Presumably, this exception to the document-received requirement was created due to the exigencies of trial:  if strict compliance with the requirement of a document being received were enforced in the context of a trial, defendants could never remove a case during trial because the case would often proceed to a verdict before the plaintiff or the court could excuse themselves from the trial long enough to create a document.

The case of Heniford v. American Motors Sales Corp., 471 F. Supp. 328, 332 (D.S.C. 1979), cited by Valspar in its objections, falls into this first

14

category of distinguishable cases because the case became removable during trial in the state court. Id. Therefore, the court does not rely on Heniford for the proposition that the document-received requirement may be waived if a case becomes removable outside of the trial context.[5] As has already been established, cases where removal becomes apparent during the state court trial itself are an exception to the document-received requirement.

The second category of cases the court distinguishes are cases where the court allowed removal without discussing the document-received requirement of § 1446(b), but the court's discussion of the facts demonstrates that there clearly was a document received by the defendant in the case. See e.g. Estate of Martineau v. Arco Chemical Co., 203 F.3d 904, 909-10 (5th Cir. 2000) (allowing removal where removing defendant received a document in the form of a letter settlement agreement and filed notice to remove thereafter); Ratcliff v. Fibreboard Corp., 819 F. Supp. 584, 585-87 (W.D. Tex. 1992) (allowing

---

[5]To the extent the Heniford opinion may be read to dispense with the document-received requirement in all cases, the opinion is on shaky ground. The Heniford court cited Bumgardner, discussed below, Gregory v. West Virginia Pulp & Paper Co., 112 F. Supp. 8, 10 (E.D.N.C. 1953); and Kulbeth v. Woolnought, 324 F. Supp. 908 (S.D. Tex. 1971), as cases dispensing with the document-received requirement. See Heniford, 471 F. Supp. at 335. The facts recited in the Gregory case clearly show that a document *was* received in the form of a copy an affidavit, a copy of a deed, and an amended petition in the state court action naming the now-diverse parties as the parties to the law suit. Gregory, 112 F. Supp. at 9-10. The Kulbeth case is inapposite as it concerns a case that was removable initially, and it also reveals that a document was received–a state court petition. Kulbeth, 324 F. Supp. at 909-11.

removal where removing defendant received five letter agreements memorializing the settlements between plaintiffs and resident defendants). <u>Cf. Central Iowa Agri-Systems v. Old Heritage Advertising and Publishers, Inc.</u>, 727 F. Supp. 1304, 1305 (S.D. Iowa 1989) (holding that plaintiff's demand letter establishing the amount in controversy was an "other paper" under § 1446(b) establishing defendant's right to remove on the basis of diversity jurisdiction).

In interpreting § 1446(b), courts which have discussed the document-received requirement have concluded that the document referenced by that statute must be a document generated within the state court litigation itself. <u>Johansen v. Employee Benefit Claims, Inc.</u>, 668 F. Supp. 1294, 1296-97 (D. Minn. 1987); <u>Putterman v. Daveler</u>, 169 F. Supp. 125, 129 (D. Del. 1958).

There are three other cases this court discusses at some length because they do not fit neatly into one of the two categories of cases cited above that are distinguishable. In these cases, "all roads lead to Rome" in the sense that each of the cases relies on a 1934 case from the Western District of Missouri as authority, <u>Gable v. Chicago, M., St. P. & P.R. Co.</u>, 8 F. Supp. 944 (W.D. Mo. 1934). Thus, discussion of the <u>Gable</u> case is addressed first.

In <u>Gable</u>, the plaintiff entered into a settlement with the resident defendant, leading the nonresident defendant to remove the case prior to the formal dismissal of the resident defendant from the state action. <u>Id.</u> at 945-46.

16

The plaintiff moved to remand on the basis that the resident defendant was still a party.  Id.  The court declined to remand, noting that the cause of action stated against the resident defendant had been extinguished, regardless of whether that defendant had been formally dismissed.  Id.  The opinion never reveals whether a document of any kind was received by the removing defendant, thus triggering the right to remove under § 1446(b).  Id. at 945-47.

Importantly, the Gable opinion dates from 1934 and never recites the precise language of the removal statute, so it is difficult to tell whether the 1934 predecessor of § 1446(b) is similar to the current statute.  Id.  It most assuredly is not.

Attached as an appendix to this opinion are the removal statutes that were in effect in 1934, codified then at 28 U.S.C. §§ 71-83.  Under those statutes, which would have been in effect when the Gable decision was made, removal in diversity cases was to be made prior to the time an answer was filed in the state court action.  See Appendix, 28 U.S.C. § 72.  The only exception was if a defendant could prove through affidavit that he was unable "from prejudice or local influence" to "obtain justice in the state court," in which case the case could be removed after the time for filing an answer had passed.  Id. There is no mention whatsoever in these 1934 removal statutes of the requirement that the defendant receive a document evidencing the right to remove prior to removing a case.  See Appendix.  This was because the great

17

majority of cases were required to be removed at the beginning of the lawsuit suit, so the basis for removal would have had to have been evident from the plaintiff's complaint or petition.  Id.  The exception, removal because of local prejudice, would not have been evident in any kind of amended pleading or document, so there was no document-received requirement for this category of post-answer removals.  Id.  The contents of these 1934 removal statutes reveal that no modern court interpreting the current statute, 28 U.S.C. § 1446(b), should rely on the Gable decision for authority.

However, that is precisely what appears to have occurred in at least two other cases from the modern era.  In Chohlis v. Cessna Aircraft Co., 760 F.2d 901 (8th Cir. 1985), a plaintiff brought a wrongful death action against a pilot and the manufacturer of the plane he was piloting.  Id. at 903.  The plaintiff and the pilot were citizens of the same state, destroying diversity jurisdiction. Id. at 903 n.2.

When the plaintiff settled her claim with the pilot, the plane manufacturer removed the action to federal court.  Id. at 903.  On appeal, the plaintiff argued that the district court erred in taking the case because the pilot had not been dismissed from the state court suit at the time of removal.  Id. at 903 n.2.  Citing the Gable decision, among others, the Eighth Circuit dispensed with this argument in a single footnote, stating that the "question [as to removal] was properly decided by a magistrate, who concluded that a

settlement between [the plaintiff] and the pilot's estate was final enough to support removal." Id.

Although the opinion reveals that the pilot was never dismissed from the state court action prior to removal, the opinion never discusses whether there was any document received by Cessna memorializing the settlement or what facts the magistrate judge relied upon in determining the settlement was "final enough" to allow removal. Id. It is entirely possible that a document had been received and that the court was addressing the argument that removal should not be had because the pilot had not been formally dismissed from the case at the time of removal. This, as was discussed in this court's initial report and recommendation (see Docket No. 16), is not fatal to removal if realignment of the parties is proper. Thus, the Chohlis opinion, though a rare appellate opinion and one that is binding on this court, is not conclusive because there simply are not enough facts revealed in the opinion to determine if it is applicable to the precise issue in this case.

Likewise, the case of Bumgardner v. Combustion Engineering, Inc., 432 F. Supp. 1289 (D.S.C. 1977) (cited by the Chohlis and Heniford cases), relies in part on an extended discussion of the Gable case. In the Bumgardner case, the plaintiff and a resident defendant secretly settled their claims without notifying the other parties. Id. at 1290-91. The settling resident defendant had asserted cross-claims against the other nonresident defendants. Id. At a

subsequent deposition of a key witness, the attorney for the plaintiff gave the attorney for the resident settling defendant a handwritten list of questions to ask the deponent.  Id.  During the course of the deposition, the attorneys for the nonresident defendants became suspicious because the questions being asked by the resident defendant were so favorable to the plaintiff.  Id.  They confronted the attorney for the resident defendant and he revealed the existence of the settlement agreement and showed the other defense attorneys the list of questions that the plaintiff's attorney had given him.  Id.  The nonresident defendants immediately petitioned for removal.  Id. at 1291.

The Bumgardner case does not discuss the document-received requirement of § 1446(b), although the factual recitation makes clear that the removing defendants did receive a document–the handwritten list of questions from the plaintiff's attorney.  Id. at 1290-92.  The holding of the Bumgardner court, relying on the earlier Gable decision, was that the case was removable upon the settlement, regardless of whether the resident defendant had been formally dismissed from the state action at the time of removal.  Id.

The holdings of the Bumgardner, Chohlis, cases are called into doubt because of their reliance on Gable, a decision that is clearly inapposite to any analysis of § 1446(b) because of the substantive difference in the modern removal statutes and those statutes which existed in 1934.  However, even

assuming that the holdings of these three cases are still good law, they are unexceptional and do not dictate the result in this case.

These three cases stand for the proposition that removal can still be had even if the settling, resident defendant has not been formally dismissed from the case. Although these cases do not discuss realignment, as can be seen from the court's discussion in its previous report and recommendation (see Docket 16 at subsections B and C), the failure to formally dismiss a settling resident defendant does not pose an impediment to removal because that defendant can and should be realigned with the plaintiff or realigned as a third-party defendant (in which case citizenship is not taken into account). These three cases do not speak to the requirement of § 1446(b) that a document of some kind must be received by the removing defendant in order to trigger the right to remove.

Based on the foregoing authorities, this court affirms its prior conclusion that removal pursuant to 28 U.S.C. § 1446(b) requires the receipt of a document of some kind evidencing the right to remove. It remains to be decided, then, whether the e-mail received in this case constitutes such a document.

### 3. Whether the E-Mail Satisfies the Written Document Requirement

The document-received requirement of § 1446(b) requires that three elements be met: (1) there exists an "amended pleading, motion, order or other

paper" which (2) the removing party received from the opposing party or from the court from which (3) the removing party is able to "first ascertain" that federal diversity jurisdiction exists. Movie Gallery US, LLC v. Smith, 574 F. Supp. 2d 1244, 1248 (M.D. Ala. 2008).

It is clear to the court that the form of the document received in this case–an electronic written communication in the form of an e-mail–does constitute an "other paper" within the meaning of § 1446(b), thus satisfying the first element. See Lowery v. Alabama Power Co., 483 F.3d 1184, 1212 n.62 (11th Cir. 2007), cert. denied *sub nom*, ___ U.S. ___, 128 S. Ct. 2877 (2008) (citing Callahan v. Countrywide Home Loans, Inc., 2006 WL 1776747, at ** 3-4 (N.D. Fla. June 26, 2006), for the proposition that an e-mail may satisfy the "other paper" requirement); Baker v. Nextel South Corp., 2009 WL 1703276, *2 n.3 (S.D. Fla. May 26, 2009) (assuming, without deciding, that an e-mail qualified as an "other paper" under § 1446(b)); Movie Gallery US, LLC, 574 F. Supp. 2d at 1247-48 (citing to the Lowery footnote in support of the proposition that an e-mail may constitute an "other paper"); Simpson v. AWC 1997 Corp., 2008 WL 2884999, *3 (N.D.N.Y. July 23, 2008) (holding that e-mailed copy of answers to interrogatories constituted "other paper"); and Clipper Telecomminications, Inc. v. ETS Payphones, Inc., 2008 WL 2368094, *1, 3 (W.D. Tex. Mar. 11, 2008) (e-mailed settlement negotiations constituted "other paper"). Also, it is clear that Valspar received the document from an opposing

party, Ms. Estes (against whom Valspar had asserted a cross-claim), thus satisfying the second element.

The real issue with regard to the June 10, 2009, e-mail from Ms. Estes' lawyer to Valspar's lawyer is whether, from the face of that document, it can be ascertained that the case was now removable on the basis of federal diversity jurisdiction. As the <u>Lowery</u> court, cited by Valspar itself, stated, the document received must "unambiguously establish federal jurisdiction." <u>Lowrey</u>, 483 F.3d at 1213. The court must remand unless the basis for jurisdiction "is either stated clearly on the face of the documents before the court, or readily deducible from them. . ." <u>Id.</u> at 1211. <u>See also</u>, <u>Movie Gallery US, LLC</u>, 574 F. Supp. 2d at 1248 (same).

This issue is problematic for Valspar. The June 10, 2009, e-mail does not explicitly confirm that Ms. Estes settled with State Farm. Nor is the fact of settlement "readily deducible" from the e-mail. Rather, Ms. Estes' lawyer simply expresses an interest in the outcome of the litigation. This expression of interest could be no less true if Ms. Estes were in or out of the litigation.

Indeed, Valspar's assertion that the e-mail clearly expresses the fact of settlement is belied by Valspar's own conduct. After receiving the e-mail from Ms. Estes' counsel, Valspar sent its own e-mail *asking* whether settlement had occurred. <u>See</u> Docket No. 18-3. If settlement were obvious from the face of

Ms. Estes' e-mail, there would have been no need for Valspar to have subsequently inquired whether a settlement had been reached.

The Bumgardner case, discussed earlier, deserves mention at this point. In that case, the document in question was a hand-written list of questions drafted by the plaintiff and given to the settling defendant to ask a witness at a deposition. Bumgardner, 432 F. Supp. at 1289-92. The questions were so obviously favorable to the plaintiff and against the settling defendant's interests that the other defendants immediately became suspicious, whereupon they questioned the settling defendant and learned of the settlement. Id. In the words of the Lowrey court, the list of hand-written questions from the plaintiff was of such a nature that the fact of settlement (and, hence, the basis for removal jurisdiction), was "readily deducible from them." Lowrey, 483 F.3d at 1211. The same cannot be said for the e-mail in question in this case.

The court notes that the cases draw a distinction between arguments for remand that attack the procedure of the removal and challenges to the court's subject matter jurisdiction. Lowery, 483 F.3d at 1213 n.64. Under § 1446(c), a plaintiff has only 30 days to move to remand on the basis that the procedure for removal was flawed. Id. However, challenges to the court's subject matter jurisdiction may be raised at any time. Id. Furthermore, when an argument is raised that the procedure for removal was improper, the court is limited to considering the propriety of removal based only on the documents

24

that existed in the state court at the time the action was removed.  Id. at 1214-15, and n. 64, n.66.  When a challenge is raised to the court's subject matter jurisdiction, however, "the court may look to any relevant information the parties may present, up until the time of the challenge to jurisdiction.  Id. at 1213 n.64 (citing Grubbs v. Gen. Elec. Credit Corp., 405 U.S. 699, 702 (1972).

State Farm's argument for remand in this case is that the procedure for removal was improper.  State Farm is not arguing–at this juncture now–that this court lacks subject matter jurisdiction.  Indeed, it appears subject matter jurisdiction exists.  The question then, is procedure, and the court is limited to the documents known to Valspar in the state court proceeding at the time of removal.  From the face of those documents, and construing the removal statutes strictly as this court must, this court simply cannot conclude that Valspar has carried its burden of demonstrating an unequivocal right to remove.

Nor is the result reached in this case anomalous.  There is no evidence that State Farm or Ms. Estes acted in bad faith to prevent Valspar from removing this matter.  Valspar could have asked State Farm to send Valspar a letter confirming the fact of settlement.  If State Farm would not willingly do this, Valspar could have served State Farm with a request to admit the fact of settlement and asked the state court for an order shortening the customary 30-day response time.  See S.D.C.L. § 15-6-36(a) (providing for requests to admit

as a discovery device and granting the state trial court discretion to require a response thereto in less than the normal 30 days granted by statute).

Furthermore, disallowing removal does not undermine a constitutional right. The right to remove is solely a creature of statute. 14B <u>Federal Practice & Procedure</u>, § 3721, pages 285-86. Removal takes a case from a court that has a clear and co-equal right to hear the case–hence, the rule that removal statutes should be strictly construed. <u>Shamrock Oil & Gas Corp.</u>, 313 U.S. at 109.

Furthermore, although state court prejudice against an out-of-state defendant is at the heart of the right to remove, here that value is not in issue as the action between Valspar and State Farm is an action between two out-of-state corporations. Neither can be presumed to have an advantage or a disadvantage in South Dakota state court.

This court concludes that State Farm's motion to remand must be granted. The court bases this conclusion on the following factors. The right of removal is wholly statutory and must, therefore, depend on an interpretation of the words of the statute. 14B <u>Federal Practice & Procedure</u>, § 3721, pages 285-86. The statute–§1446(b)–requires that a document be received by the removing defendant before the right to remove is triggered. <u>See</u> 28 U.S.C. § 1446(b). Also, the statute is to be strictly construed due to comity concerns

because the right to remove is in derogation of the power of state courts to hear cases within their jurisdiction. <u>Shamrock Oil & Gas Corp.</u>, 313 U.S. at 109.

Finally, the burden is on Valspar as the removing party to unequivocally demonstrate that this court has removal jurisdiction. <u>Central Iowa Power Coop.</u>, 561 F.3d at 912. All doubts as to whether removal jurisdiction exists are to be resolved in favor of remand. <u>Id.</u>; <u>Bates</u>, 548 F.3d at 638. Valspar has failed to cite the court to a single case where a court clearly and unequivocally held that the document-received requirement of § 1446(b) was not met, and was waived by the federal court, where removal took place in a context outside of trial in the state court. Based on the above discussion, then, this court respectfully recommends that this case be remanded back to South Dakota state court.

## CONCLUSION

Based on the foregoing discussion, this court recommends that State Farm's motion to remand this case back to South Dakota state court [Docket No. 9] be granted and that Valspar's objections to this court original report and recommendation [Docket 17] be overruled.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1)(B), unless an extension of time for good cause is obtained. <u>See</u> <u>also</u> Fed. R. Civ. P.

72(b)(2). Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require *de novo* review by the district court. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

Dated January 11, 2010.

BY THE COURT:

/s/ *Veronica L. Duffy*

VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE